UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BASHEEM SMALLS, <br><br>      PLAINTIFF, <br><br>      V. <br><br> C.O. SASSAMAN; <br> SIS LT. BROWN, <br> C.O. WEAVER; <br> LT.REED; <br> C.O. YOST; <br> C.O. MARTIN; <br> SIA LYONS; <br> CERTAIN MEDICAL STAFF; <br> AND CAPTAIN. S. SPAULDING <br> ACTING IN CAPACITY AS <br> WARDEN. <br><br>      DEFENDANTS, | CASE. NO. 1:17cv2237 <br><br> JURY TRIAL <br> REQUESTED COMPLAINT- <br> INDIVIDUAL <br><br> **FILED** <br> **SCRANTON** <br><br> DEC 0 6 2017 <br><br> PER _____ <br> **DEPUTY CLERK** |

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

I. Introduction

    COMES NOW Basheem Smalls, Reg. No. 55719-054, Pro-Se per Haines v. Kerner, 404 US 519-520 (1972) before this court and Avers the following:

    1. This case seeks money damages for an individual who was incarcerated in FCI-Allenwood in White Deer, Pennsylvania 17887 in the segregated housing unit (SHU) where he was brutally assaulted and sexually violated by certain Defendants listed above while others either participated in the violation or tried to cover up the offenses by intimidation and or retaliation.

II. Jurisdiction and Venue

    2. This action is brought pursuant to 42 USC  Sect. 1983 and is premised on the eighth amendment to the United States Constitution. This court has original subject matter jurisdict-

-1-

ion of the federal questions presented pursuant to 28 USC Sects.

1331 And 1343. And Bivens

3. Venue is proper in this court and division, pursuant to 28 USC Sect. 1391, because the events giving rise to this action occured in, and the Defendants are located in the Middle District of Pennsylvania.

## III. Parties

4. Plaintiff Brasheem Smalls is an adult incarcerated in SHU in FCI-Allenwood, White Deer, Pennsylvania. He brings this suit in his individual capacity as a person who was subjected to the cruel and unusual punishment inflicted on him by the Defendants, individually and / or jointly.

5. C.O. Sassaman; Sis Lt. Brown; C.O. Weaver; Lt. Reed; C.O. Yost; C.O. Martin; Sia Lyons; Certain Medical Staff; and Captain. S. Spaulding, acting in the capacity as Warden are all Federal employees of the Federal Bureau of Prisons with their assignment being at FCI-Allenwood, White Deer, PA 17887. In some capacity each Defendant is responsible for carrying out the policies of the Federal Bureau of Prisons.

## IV. Facts

6. On August 23, 2016 the Plaintiff was ordered to take a cellmate in  the SHU cell where he was housed by C.O. Sassaman.

7. The Plaintiff replied to C.O. Sassaman that he didn't feel safe with the particular inmate he was trying to put into

his SHU cell.

8. Accompanying C.O. Sassaman was Sis Lt. Brown, and he stated that the Plaintiff can have this inmate as his cellmate, and once again the Plaintiff stated that he didn't feel safe with this person.

9. The Plaintiff was ordered out of the SHU cell by C.O. Sassaman, and the Plaintiff willingly complied with the order.

10. After exiting the cell C.O. Sassaman handcuffed the Plaintiff and took him to the SHU intake holding cell, and the Plaintiff entered the cell.

11. Sis Lt. Brown asked the Plaintiff if he was refusing to take on a cellmate. The Plaintiff replied no, but that he did not want to be with someone who would attack him.

12. Sis Lt. Brown then stated, "Don't come at me, I'll knock your teeth out of your mouth." The Plaintiff responded by stating that he was not trying to come at the Sis. Lt. Brown. The Plaintiff was still handcuffed at that time.

13. Sis Lt. Brown then said, "I don't give a damn if you're handcuffed. I'll throw you on the ground. The Petitioner remained silent and the Sis. Lt. Brown walked away.

14. While the Plaintiff was in the holding cell, C.O., Sassaman was conducting a search of the Plaintiff's assigned SHU cell (cell # 217).

15. The Plaintiff was being escorted back to cell # 217 when he noticed his personal property in a clear garbage bag.

-3-

The Plaintiff advised C.O. Sassaman that the items in the bag were his personal property.

16. As the Plaintiff was talking about his property, while he was still cuffed, C.O. Sassaman pushed the Plaintiff down the wall near the stairwell. While telling the Plaintiff to stop resisting, C.O. Sassaman  threw the Plaintiff on the stairs.

17. C.O. Sassaman used excessive force to press down on the Plaintiff's handcuffed hands while exerting force on his back. The Plaintiff never resisted against this brutality. (view video surveilance.)

18. Suddenly other officers arrived and the Plaintiff was lifted up by his legs and handcuffed hands; while another officer grabbed him by the neck. All the while the Plaintiff never resisted.

19. The Plaintiff was taken to a different cell where he was violently placed on the wall and had his clothes stripped off of him.

20. Plaintiff, while naked, was thrown onto the concrete floor. While there C.O. Sassaman, using excessive force sat his whole body weight on Plaintiff and while sweating on him, ripped the paper underwear as he tried to put them on Plaintiff causing him to inappropriately touch the Plaintiff in his genital and anal area of his body. C.O. Sassaman caused bruising on the Plaintiff's legs.

21. The Plaintiff was then lifted by the other officers and put in arm and leg restraints.

-4-

22. The Plaintiff was escorted to another cell where he was left in the restraints; two paper sheets were thrown on the bed and the officers along with a Lieutenant exited the cell.

23. A short time later Sis. Lt. Brown, C.O. Sassaman, and C.O. Weaver returned to the cell, Sis. Lt. Brown told the Plaintiff that he was lucky that it was not him because the Plaintiff wouldn't have any teeth.

24. The Plaintiff responded by saying that he had not done anything. Wherein C.O. Sassaman replied, "You know how you made me look. You should have taken a celly. Now look how you have to be." The officers then exited the cell.

25. The Lieutenant came back, with a medical staff member to check Plaintiff's hands and legs. Throughout the night. The morning watch Lieutenant checked on the (still restrained) Plaintiff every few hours.

26. Once during the night the Plaintiff told the medical person that he felt pain in his back. The medical person asked about the intensity of the pain from level 1 to 10, where the Plaintiff responded "7".

27. The medical person said this is typical of pain associated with being left in restraints.

28. The medical person then advised the Plaintiff that if the problem persisted that he should sign-up for sick-call on August 24, 2016.

29. Lieutenant Reed came in to check the Plaintiff's

-5-

hands and legs, and told him that 10 a.m., after the executive
staff make their SHU rounds, he would then remove the restraints.

30. Lieutenant Reed and C.O. Yost took the restraints off
the Plaintiff following a DHO hearing for an incident report,
which was expunged.

31. The Plaintiff was escorted to the SHU Lieutenant's
office and given an incident report written by C.O. Sassaman.

32. After the 4 p.m. count, C.O. Sassaman put another in-
cident report under the Plaintiff's cell door which was written
by C.O. Sassaman.

33. On August 25, 2016 the Petitioner told C.O. Martin that
he needed to see Psychology because he was inappropriately touch-
ed.

34. The Plaintiff was taken to the SHU intake holding cell
where Sia. Lyons came to interview him.

35. The Plaintiff did not want to speak to Sia. Lyons be-
cause of threats of retaliation from the SHU officers.

36. Sia. Lyons told the Plaintiff that he could not leave
until he spoke with the Sia.

37. The Plaintiff then re-iterated the fact that the SHU
officers threatened him with retaliation for speaking with Sia.

38. Sia. Lyons then informed the Plaintiff that whether
he spoke to him or not, the officers would believe that he
spoke with the Sia.

-6-

39. Convinced of impending retaliation the Plaintiff told Sia. Lyons what happened. The Plaintiff was then escorted back to his cell.

40. The retaliation began at dinner when C.O. Martin gave the Plaintiff his food tray without utensils.

41. When the Plaintiff complained, C.O. Martin said that the Plaintiff should use his fingers.

42. The Plaintiff then told C.O. Martin that his entire meal wasn't there, C.O. Martin said that what he received was all that he was getting for that day.

43. From that day forth the officers used various means of retaliation against the Plaintiff, such as giving him half towels, ripped sheets, shower curtains with strong urine smells on them, and denied him recreation.

44. There were no restraints put on these officers, even though the Plaintiff spoke with the Captain S. Spaulding and Warden. All of the Plaintiff's complaints were ignored.

45. Both of C.O. Sassaman's incident reports were not held against the Plaintiff and were withdrawn.

46. All named above showed deliberate indifference to the eighth amendment violation suffered by the Plaintiff.

47. That this treatment was the direct cause of the Plaintiff's damages:

    A. Violation of his constitutional right under the eighth amendment against cruel and unusual

punishment.

B. Emotional trauma.

C. Physical harm and injury.

D. The loss of personal property.

E. Freedom from unjustified force against the
   person.

## V. Claims

48. Defendant's actions and inactions constitute cruel and unusual punishment in contravention of the eighth amendment, actionable pursuant to 42 USC Sect. 1983.

49. Plaintiff reserves the right to proceed with any and all claims which the facts averred in this complaint support, pursuant to the notice pleading requirements of the federal rule of Civil Procedure 8.

## VI. Jury Trial Requested

50. The Plaintiff requests a Jury Trial on his claims.

## VII. Relief Requested.

51. The Plaintiff seeks all relief available under the law, including the monetary amount of $2,000,000.00 (Two Million Dollars) from which he can be compensated for the violations leveled against him as damages, attorney fees (if needed), and costs, and all other appropriate relief.


Respectfully Submitted,

*Basheem Smalls*                          Date: 11-30-17

Basheem Smalls, Pro-Se

Reg. No. 55719-054

FCI-Gilmer

P.O. Box 6000

Glenville, WV 26351

-8-



DaSheen Smalls 5571-Gross
Federal Correctional Institution 2
PO Box 6000
Glenville, WV 26351

<55719-054>
1 William J Federal Us Court
235 N Washington AVE
Scranton, PA 18503
United States

RECEIVED
SCRANTON
DEC 0 6 2017
PER_____ DEPUTY CLERK