## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BASHEEM SMALLS,** | : | **CIVIL NO. 1:17-CV-2237** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **C.O. SASSAMAN,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Basheem Smalls ("Smalls"), an inmate who, at all relevant times,

was housed at the Federal Correctional Institution, Allenwood, Pennsylvania ("FCI-

Allenwood"), commenced this <u>Bivens</u>[1] action on December 6, 2017.  (Doc. 1).

Named as defendants are A. Sassaman, J. Brown, K. Weaver, H. Reed, P. Yost, F.

Martin, J. Lyons, and S. Spaulding.  (<u>Id.</u>)  Before the court is defendants' partial

motion (Doc. 20) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and

---

[1] <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971) (holding
that there exists an implied private action for damages against federal officers
alleged to have violated a citizen's constitutional rights).

for summary judgment pursuant to Federal Rule of Civil Procedure 56.[2]  For the reasons set forth below, the motion to dismiss will be granted and the motion for summary judgment will be granted in part and denied in part.

## I.    <u>Allegations of the Complaint</u>

On August 23, 2016, when Smalls was housed in the Special Housing Unit ("SHU"), defendant Sassaman allegedly ordered him to accept a cellmate.  (Doc. 1, ¶ 6).  Smalls informed defendants Sassaman and Brown that he did not feel safe with the particular inmate they were placing in his cell.  (<u>Id.</u> at ¶¶ 7-8).  Defendant Sassaman then ordered Smalls out of the cell, handcuffed him, and placed him in the SHU holding cell.  (<u>Id.</u> at ¶¶ 9-10).

Defendant Brown asked Smalls if he was refusing a cellmate.  (<u>Id.</u> at ¶ 11).  Smalls informed defendant Brown that was not refusing a cellmate, but he did not want to be housed with an inmate who would attack him.  (<u>Id.</u>)  Defendant Brown then allegedly stated to Smalls, "Don't come at me, I'll knock your teeth out of your mouth", and "I don't give a damn if you're handcuffed.  I'll throw you on the ground."  (<u>Id.</u> at ¶ 12-13).

---

[2]  Because defendants rely on documents outside the pleadings to support their arguments regarding exhaustion of administrative remedies and the excessive force claim, the court will address these arguments under the summary judgment standard.  By order dated May 31, 2019, the court placed the parties on notice that the exhaustion argument shall be analyzed under the summary judgment standard, and the court may consider exhaustion in its role as fact finder under <u>Small v. Camden County</u>, 728 F.3d 265 (3d Cir. 2013).  (Doc. 37) (citing <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018)).  The order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (<u>Id.</u>)

While Smalls was in the holding cell, defendant Sassaman searched his cell. (Id. at ¶ 14). Smalls was escorted back to his cell, noticed that his personal property was in a clear plastic bag, and informed defendant Sassaman that the items in the bag were his personal property. (Id. at ¶ 15). Smalls alleges that defendant Sassaman then pushed him down the wall near the stairwell, threw him on the stairs, and used excessive force to press down on Smalls' handcuffed hands while exerting force on his back. (Id. at ¶¶ 16-17). Other officers arrived, lifted Smalls, carried him to a different cell, and stripped him of his clothes. (Id. at ¶¶ 18-19). Smalls alleges that defendant Sassaman used excessive force when trying to put paper underwear on him, causing him to rip the paper underwear and touch Smalls inappropriately in his genital and anal areas, and caused bruising to Smalls' legs. (Id. at ¶ 20).

Correctional officers then placed Smalls in hand and leg restraints and escorted him to another cell. (Id. at ¶¶ 21-22). Defendants Brown, Sassaman, and Weaver returned to Smalls' cell. (Id. at ¶ 23). Defendant Brown allegedly told Smalls, "he was lucky that it was not him because the Plaintiff wouldn't have any teeth." (Id.) Defendant Sassaman allegedly stated, "You know how you made me look. You should have taken a celly. Now look how you have to be." (Id. at ¶ 24).

Smalls remained in the cell for the night and was intermittently checked by a lieutenant and medical staff member. (Id. at ¶¶ 25-26). At one point during the night, Smalls informed the medical staff member that he was experiencing back

pain. (Id. at ¶ 26). The staff member advised Smalls that it was normal for the restraints to cause pain. (Id. at ¶ 27).

Defendant Reed checked Smalls' hands and legs while he was in restraints and told Smalls he would remove the restraints after the 10:00 a.m. rounds by executive staff. (Id. at ¶ 29). Defendants Reed and Yost took the restraints off of Smalls. (Id. at ¶ 30).

Smalls was then escorted to the SHU's lieutenant's office and was handed two incident reports issued by defendant Sassaman. (Id. at ¶¶ 31-32). The incident reports were subsequently withdrawn. (Id. at ¶ 45).

On August 25, 2016, Smalls spoke with defendant Martin and requested treatment with the psychology department due to the alleged inappropriate touching that occurred during the incident. (Id. at ¶ 33). Smalls was escorted to the SHU holding cell and interviewed by defendant Lyons. (Id. at ¶ 34). Defendant Lyons allegedly told Smalls he could not leave until Smalls spoke to him about the incident. (Id. at ¶ 36). Smalls told defendant Lyons about the incident and was escorted back to his cell. (Id. at ¶ 38).

At dinner, defendant Martin gave Smalls his food on a tray without utensils in alleged retaliation for talking to defendant Lyons about being inappropriately touched. (Id. at ¶ 40). Defendant Martin allegedly told Smalls to eat with his fingers. (Id. at ¶ 41). Smalls complained that he did not receive his entire meal, and defendant Martin allegedly told Smalls that "what he received was all that he was getting for that day." (Id. at ¶ 42).

Smalls alleges that he spoke with defendant Spaulding about there being "no restraints put on these officers", but he allegedly ignored Smalls' complaints. (Id. at ¶ 44).

## II.    **Motion to Dismiss**

### A.    **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See

Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step,

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as

true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v.

UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual

allegations have been isolated, the court must determine whether they are sufficient

to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550

U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

to "raise a right to relief above the speculative level").  A claim "has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

### B.  Discussion

#### 1.  *Lack of Personal Involvement of defendants Brown, Weaver, Reed, Yost, Lyons, and Spaulding*

Defendants Brown, Weaver, Reed, Yost, Lyons, and Spaulding argue that

Smalls fails to state a claim against them because they lack personal involvement in

the alleged wrongs.  (Doc. 23, at 10-12).

Individual liability can be imposed under section 1983 only if the state actor

played an "affirmative part" in the alleged misconduct and "cannot be predicated

solely on the operation of respondeat superior."  Evancho v. Fisher, 423 F.3d 347,

6

353 (3d Cir. 2005) (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998)).

"A defendant in a civil rights action must have personal involvement in the alleged

wrongs. . . . Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." <u>Rode</u>, 845 F.2d at 1207-08; <u>see</u>

<u>also</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Atkinson v. Taylor</u>, 316 F.3d 257 (3d Cir.

2003). Such allegations, however, must be made with appropriate particularity in

that a complaint must allege the particulars of conduct, time, place, and person

responsible. <u>Evancho</u>, 423 F.3d at 354; <u>Rode</u>, 845 F.2d at 1207-08. Alleging a mere

hypothesis that an individual defendant had personal knowledge or involvement in

depriving the plaintiff of his rights is insufficient to establish personal involvement.

<u>Rode</u>, 845 F.2d at 1208.

Smalls alleges only that defendant Brown made verbal threats to him, that

defendant Reid appeared at Smalls' cell when he was in restraints, that defendants

Reid and Yost assisted in taking the restraints off of Smalls, that defendant Lyons

interviewed him concerning his allegations of staff misconduct, and that defendant

Spaulding ignored his comment that corrections officers have no restraints on

them. (<u>See</u> Doc. 1). Clearly, the complaint is devoid of any factual allegations that

these defendants violated Smalls' constitutional rights. To the contrary, the

complaint fails to articulate any particular acts or omissions that would rise to the

level of a constitutional violation. Moreover, with respect to Smalls' claim that

defendant Brown made threatening statements to him, it is well-settled that the use

of words, no matter how violent, is not actionable in a federal civil rights action.

See Marten v. Hunt, 479 F. App'x 436 (3d Cir. 2012); Lewis v. Wetzel, 153 F.Supp.3d 678 (M.D. Pa. 2015).

The court will grant defendants' motion to dismiss the claims against Brown, Weaver, Reed, Yost, Lyons, and Spaulding based on lack of personal involvement in the alleged constitutional violations.

### 2. *First Amendment Retaliation Claim*

Smalls alleges that defendant Martin served him a meal without utensils in retaliation for his complaints to defendant Lyons about conduct by defendant Sassaman. (Doc. 1, ¶ 40). Recent case law from the United States Supreme Court and the Third Circuit has provided that a First Amendment retaliation claim may not apply to a Bivens claim against a federal official. See Ziglar v. Abbasi, —— U.S. –—, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017); Bistrian v. Levi, 912 F.3d 79, 96 (3d Cir. 2018) ("[T]he retaliation claim is not a recognized Bivens remedy[.]"). The Supreme Court has "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 137 S.Ct. at 1857 (quoting Iqbal, 556 U.S. at 675). The Supreme Court articulated a two-part test for determining whether Bivens remedies should be extended. Ziglar, 137 S.Ct. at 1859-60. First, courts must determine whether the case presents a new Bivens context. See id. at 1859. "If the case is different in a meaningful way from previous Bivens cases decided by th[e] [Supreme] Court, then the context is new." Id. Second, if the case presents a new context, a court must then consider whether any alternative remedies exist. Id.

8

at 1859-60.  Even absent alternative remedies, a court must also consider whether special factors counsel against extending the <u>Bivens</u> remedy.  <u>Id.</u>

The Third Circuit has extended <u>Ziglar</u>'s analysis to First Amendment retaliation claims arising in an institutional security and safety context and has held that, after <u>Ziglar</u>, courts should not imply the existence of such claims under <u>Bivens</u>.  <u>See</u> <u>Vanderklok v. United States</u>, 868 F.3d 189, 198 (3d Cir. 2017) ("The Supreme Court has never implied a <u>Bivens</u> action under any clause of the First Amendment.").  Additionally, that Third Circuit has refused to extend <u>Bivens</u> to First Amendment retaliation claims in the prison context.  <u>See</u> <u>Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel</u>, 723 F. App'x 137, 139-40 (3d Cir. 2018) (affirming the dismissal of a First Amendment retaliation claim brought by a federal prisoner against correctional staff).  Specifically, the Third Circuit observed that "a First Amendment retaliation claim . . . may not apply to a <u>Bivens</u> claim against a federal official."  <u>Id.</u> at 140 n.3 (citing <u>Vanderklok</u>, 868 F.3d at 199; <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)).

The court concludes that extending <u>Bivens</u> to Smalls' First Amendment retaliation claim against Martin would be contrary to law.  Accordingly, the court will dismiss Smalls' First Amendment retaliation claim.

### C.    Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d

113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  For the reasons set forth above, the court concludes that granting leave to amend with respect to the claims against defendants Brown, Weaver, Reed, Yost, Lyons, Martin and Spaulding, and the First Amendment retaliation claim would be futile.

III.    **Motion for Summary Judgment**

   A.    **Legal Standard**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc.,

10

477 U.S. 242, 250-57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986);

see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of

action proceed. Pappas, 331 F.Supp.2d at 315.

**B.** **Statement of Material Facts[3]**

**1.** ***Facts Regarding the Incidents of August 23, 2016***

On August 23, 2016, Smalls was confined in the SHU at FCI-Allenwood.

(Doc. 24, ¶ 1, Statement of Material Facts; Doc. 32, ¶ 1, Counterstatement of

Material Facts). At approximately 6:13 p.m., defendant Sassaman and other staff

escorted an inmate down the range of the SHU to be placed into Smalls' cell. (Id. at

¶ 2). The inmate was stopped prior to Smalls' cell while one of the officers walked

ahead and talked to Smalls through the food slot of his cell door. (Id. at ¶ 3).

Defendants contend that the escorting inmate never made it to the front of Smalls'

window for Smalls to see the inmate. (Doc. 24, ¶ 4). Smalls asserts that he knew the

inmate the officers were attempting to place in his cell. (Doc. 32, ¶ 4). Smalls

refused to accept the cellmate, stating that SIS indicated it was unsafe for him to

have any cellmate. (Doc. 24, ¶ 5; Doc. 32, ¶ 5).

The parties dispute whether Smalls knew that the SIS lieutenant, defendant

Brown, was on the range at this time. (Doc. 24, ¶ 6; Doc. 32, ¶ 6). Defendant Brown

---

[3] In response to defendants' statement of material facts, Smalls disputes
paragraphs 4, 6, 11-15, 17, 18, and 33. (See Doc. 32, Counterstatement of Material
Facts). Smalls does not dispute the remainder of defendants' statement.

corrected Smalls and stated that no reason existed as to why he could not have a cellmate. (Id. at ¶ 7). Smalls continued to protest and stated that the inmate to be housed with him was an unsafe inmate. (Id. at ¶ 8). As a result of his non-compliance, Smalls was handcuffed, removed from his cell, pat-searched, and taken off the range. (Doc. 24, ¶ 9; Doc. 22, SHU Range Video, at 6:14:58-6:15:50; Doc. 32, ¶ 9).

At 6:58 p.m., defendant Sassaman attempted to escort Smalls from a SHU holding cell back to his assigned cell. (Doc. 24, ¶ 10; Doc. 22, CCTV SHU Dayroom Video, at 6:58:42; Doc. 32, ¶ 10). Defendants contend that, as they approached the stairwell, Smalls resisted and displayed signs of violence by pulling away from Sassaman, pushing towards him, turning towards him, cursing, and refusing to return to his cell. (Doc. 24, ¶ 11; Doc. 24, Ex. 1, Attach. D, Memorandum dated August 23, 2016). Smalls asserts that defendant Sassaman pushed him down the wall near the stairwell and pushed him onto the stairs. (Doc. 32, ¶ 11).

Defendants contend that Sassaman continued his attempts to escort Smalls to his cell despite his resistive and combative behavior. (Doc. 24, ¶ 12, Doc. 22, CCTV SHU Dayroom Video, at 6:58:42; Doc. 24, Ex. 1, Attach. D). Defendants further contend that Sassaman attempted to escort Smalls up the stairwell and turned to other staff, when Smalls purposefully collapsed on the stairs and refused to comply with any orders to get up, walk, or listen to staff. (Doc. 24, ¶ 13; Doc. 22, SHU Dayroom Video, at 6:58:50; Doc. 24, Ex. 1, Attach. D). Defendants assert that Sassaman maintained control of Smalls for several minutes using the least amount

of force necessary. (Doc. 24, ¶ 14; Doc. 22, SHU Dayroom Video, at 6:59-7:03:16; Doc. 24, Ex. 1, Attach. D). Smalls contends that defendant Sassaman should have employed the "use of force team technique" once he was subdued and should not have single-handedly attempted to escort him to his cell. (Doc. 32, ¶ 12). Smalls maintains that defendant Sassaman used excessive force during this incident. (Id. at ¶ 14).

When other staff arrived on the scene, the officers lifted Smalls from the stairs, got him to his feet, and removed him from the area. (Doc. 24, ¶ 15; Doc. 32, ¶ 15). Smalls contends that the officers lifted him by the restraints and his neck. (Doc. 32, ¶ 15).

Smalls was taken to SHU cell 101. (Doc. 24, ¶ 16; Doc. 32, ¶ 16; Attach. D). Defendant Sassaman participated in a visual search of Smalls, his placement into paper clothes, and his placement into ambulatory restraints. (Id.) Defendants contend that, while being placed in paper clothing before ambulatory restraints were applied, Smalls ripped the paper clothing by allowing his body to go limp on the floor of cell 101 in the SHU. (Doc. 24, ¶ 17). Smalls contends that he was thrown on the floor of SHU cell 101 and defendant Sassaman sat on him. (Doc. 32, ¶ 17).

Defendant Sassaman denies touching Smalls beyond escorting him in SHU, putting him in paper clothing, and helping to apply ambulatory restraints. (Doc. 24, ¶ 18). Smalls asserts that defendant Sassaman should not have been involved in the search, placing him in paper clothing, and the application of restraints. (Doc. 32, ¶ 18).

13

All of defendant Sassaman's actions on August 23, 2016 regarding Smalls were found to be in accordance with Bureau of Prisons ("BOP") policy. (Doc. 24, ¶ 19; Doc. 32, ¶ 19).

### 2.  *Facts Regarding Exhaustion*

On August 30, 2016, Smalls submitted an informal resolution form stating: "I was thrown on the stairs by Officer Sassaman and excessive force which was not need. The video is SHU show this. He also wrote me a incident report and serve me on 8-24-16. SHU video can show this. I fear for my life." [sic]. (Doc. 24, ¶ 29; Doc. 24, Ex. 2, Attach. F, at 5, Informal Resolution Form; Doc. 32, ¶ 29). In response to the informal request, defendant Lyons informed Smalls that his allegations were "being reviewed for appropriate disposition" and, "due to privacy interests of staff, inmates have no entitlements to be notified of an investigation, if any, or any administrative action taken." (Doc. 24 ¶ 30; Doc. 24, Ex. 2, Attach. F, at 6, Inmate Request to Staff Member Response; Doc. 32, ¶ 30).

From August 23, 2016, until the date that Smalls filed the instant action, he filed eight administrative remedies. (Doc. 24, ¶ 32; Doc. 24, Ex. 2, Attach. C, Administrative Remedies Generalized Retrieval; Doc. 32, ¶ 32). Defendants assert that the only administrative remedy properly exhausted through the Central Office level is remedy number 875720. (Doc. 24, ¶ 33; Doc. 24, Ex. 2, Attach. C, Administrative Remedy Generalized Retrieval).

On September 8, 2016, Smalls submitted Administrative Remedy Number 875720-F1 to the Warden claiming he was "thrown to the stairs by Officer Sassaman

14

while handcuffed," that Sassaman used excessive force by pressing down on his handcuffs and back, Sassaman used excessive force to rip paper underwear, touched him inappropriately and bruised his leg. (Doc. 24, ¶ 34; Doc. 24, Ex. 2, Attach. F, at 3, Request for Administrative Remedy 875720-F1; Doc. 32, ¶ 34). The administrative remedy also alleged that defendant Brown told him he was "lucky it wasn't him, I wouldn't have any teeth," that, since speaking to defendant Lyons about being touched inappropriately, "other officers" retaliated against him by making him eat without a spoon, taking food from his tray, and telling him he is "fucked in this institution." (Id.) Smalls stated that he feared for his life and safety in the institution. (Id.) In response, Warden Spaulding stated that allegations against staff are taken seriously and that Smalls' claims were being reviewed for appropriate disposition. (Doc. 24, ¶ 35; Doc. 32, ¶ 35).

On February 10, 2017, Smalls appealed Administrative Remedy 875720 to the Regional Office. (Doc. 24, ¶ 36; Doc. 24, Ex. 2, Attach. F, at 1; Doc. 32, ¶ 36). In the appeal, designated as 875720-R2, Smalls alleged that defendant Sassaman threw him to the stairs, used excessive force by sitting on him to put him in paper underwear, "ripped the drawers around his buttocks touching [him] inappropriately" and bruised his "thigh area." (Id.) In this appeal, Smalls also alleged that he remained in restraints from August 23, 2016 until August 24, 2016, that medical staff checked on him but did not take photographs and acted with deliberate indifference, and that he was still being subjected to staff retaliation and verbal abuse. (Doc. 24, ¶ 37; Doc. 32, ¶ 37). In response, the Regional Director

informed Smalls that his allegations were adequately addressed by the Warden, a thorough review would be conducted, but the results would not be disclosed to him because he was not entitled to the information.  (Doc. 24, ¶ 38; Doc. 24, Ex. 2, Attach. F, at 2; Doc. 32, ¶ 38).

On April 14, 2017, Smalls submitted an appeal to the Central Office alleging he was thrown to the floor, that defendant Sassaman touched him inappropriately and ripped his paper underwear around his buttocks, "touching [him] in a sexual way", and that he felt "violated sexually." (Doc. 24, ¶ 39; Doc. 24, Ex. 2 ¶ 12; Doc. 24, Ex. 2, Attach. D; Doc. 32, ¶ 39).  The appeal also stated that he was placed in ambulatory restraints from August 23, 2016 to August 24, 2016, defendant Sassaman issued two false incident reports, and that he had trouble sleeping due to these incidents.  (Id.)  In response, the Central Office Administrator informed Smalls that a thorough review of his allegations would be conducted, and proper action would be taken, that the two incident reports he received were expunged, and that he had access to psychology services at his present institution.  (Doc. 24, ¶ 40; Doc. 24, Ex. 2, Attach. E; Doc. 32, ¶ 40).

**C.    Discussion**

**1.    *Exhaustion of Administrative Review***

Defendants argue that Smalls failed to exhaust his claim that defendant Sassaman touched him inappropriately in the genital area.[4] (Doc. 23, at 9-10). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Smalls' Bivens claim falls within the ambit of the PLRA. See Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to § 1983 actions and to Bivens actions.").

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v.

---

[4] Defendants' failure to exhaust arguments with respect to the claims against Weaver, Reed, Yost, Lyons and Spaulding are rendered moot by virtue of the court's resolution of the motion to dismiss.

17

Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis, 204 F.3d at 67 (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Failure to identify a named defendant on a grievance form, absent a "justifiable excuse," constitutes failure to properly exhaust as to that defendant. Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential).

For federal prisoners, such as Smalls, the BOP has an administrative remedy procedure setting forth the necessary steps to exhaust a grievance pursuant to § 1997e(a). 28 C.F.R. § 542.10(a). Specifically, the BOP has a three-level administrative process through which an inmate can address issues concerning the conditions of his confinement. See id. An inmate must first informally present his

complaint to staff, and staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The inmate may then appeal to the BOP's Central Office within thirty calendar days, which office is the final administrative appeal level in the BOP. Id. No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. 28 C.F.R. § 542.15(a). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. 28 C.F.R. § 541.17(b).

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates. A search of BOP records was conducted to determine whether Smalls exhausted the administrative process with respect to the claims in his complaint. (Doc. 24, Ex. 2, Attach. C, Administrative Remedies Generalized Retrieval). This review revealed that Smalls fully exhausted administrative remedy 875720.

Defendants concede that Smalls exhausted his claims that defendant Sassaman used excessive force against him on the stairwell, and that he used excessive force against him while placing him in paper clothing which caused him

to inappropriately touch Smalls in the buttocks. (Doc. 24, ¶¶ 29, 34, 36, 40). Defendants also concede that Smalls exhausted his retaliation claim against defendant Martin and his verbal harassment claim against defendant Brown. (Id. at ¶¶ 34, 37). However, defendants argue that Smalls did not exhaust his claim that Sassaman touched him on his genitalia.

First, the court finds that Smalls has exhausted his claim that defendant Sassaman touched him on his genitalia. In Administrative Remedy Number 875720, and the subsequent appeals of this remedy, Smalls stated that defendant Sassaman touched him inappropriately "around [the] buttocks", "in a sexual way", and that he felt sexually violated. (Doc. 24, Ex. 2, Attach. D, Attach. F, at 1, 3). It is reasonable to conclude that this language encompasses an allegation that Smalls was inappropriately touched in the genital area.

### 2. *Excessive Force Claim*

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); see also U.S. CONST. amend. VIII. To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable state of mind" of the defendant official. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

An Eighth Amendment challenge asserting excessive force is subject to a malicious and sadistic standard.  See Zimmerman v. Schaeffer, 654 F.Supp.2d 226, 247 (M.D. Pa. 2009) (citing Hudson, 503 U.S. at 6-7).  The inquiry under this standard is whether prison officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S. at 6 (citations and quotations omitted); see also Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).  In an excessive force case, a prisoner need not show significant injury; however, *de minimis* uses of physical force are insufficient to establish an Eighth Amendment violation.  Hudson, 503 U.S. at 9-10.  Excessive force claims are typically based in emergency situations where prison officials must use force and act quickly and decisively to maintain or restore discipline.  See Hudson, 503 U.S. at 6-7.

Where events at issue have been captured on videotape, the court must consider that videotaped evidence in determining whether there is any genuine dispute as to material facts.  See Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The court must view the facts in the light depicted by the videotape.  See id. (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").  Where a videotape refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate.  See Tindell v. Beard, 351 F. App'x 591 (3d Cir. 2009).

Smalls asserts that, on August 23, 2016, he was escorted by defendant Sassaman through the SHU when Sassaman pushed him down the wall, threw him on the stairs, and used excessive force to press down on Smalls' handcuffed hands while exerting force on his back. A review of the video footage clearly shows that defendant Sassaman's use of force was reasonable, justified, and, most importantly, not excessive. The video shows that defendant Sassaman was walking with Smalls towards the staircase, when Smalls abruptly fell on the stairs. When they were approaching the stairs, defendant Sassaman appears to be lightly holding Smalls' arm, was looking in the other direction talking to another officer, and appears to be startled when Smalls falls on the stairs. Defendant Sassaman quickly reacts and leans over Smalls to maintain control over him. The video shows that defendant Sassaman restrained Smalls while waiting for other officers to arrive, it does not show the officer attacking him in any way. Moreover, it does not appear that Smalls ever touched the wall during this incident, and certainly was not pushed down the wall, as alleged.

Upon review of the security footage, it is clear that the force applied by defendant Sassaman was not excessive so as to exceed Eighth Amendment limitations. At no point in time did defendant Sassaman push Smalls down the wall, throw him on the stairs, or use excessive force to press down on his hands and back, as Smalls alleges. Instead, the video clearly indicates that the force used by defendant Sassaman was used to maintain control over Smalls when he was lying on the stairs. The force used by defendant Sassaman throughout the incident was

22

minimal, at most, and applied in a good faith effort to maintain control over Smalls. The Supreme Court has instructed, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." <u>Whitley</u>, 475 U.S. at 321-22. Smalls' allegations against defendant Sassaman are discredited by the security video footage, which fails to show that he used force maliciously or sadistically to cause harm. No rational trier of fact could view the video footage and find that defendant Sassaman used excessive force under the circumstances. Therefore, defendant Sassaman is entitled to summary judgment on the excessive force claim.

**IV.**  **<u>Conclusion</u>**

For the reasons set forth above, the partial motion to dismiss will be granted and the partial motion for summary judgment will be granted in part and denied in part. (Doc. 20). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        September 4, 2019