IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BASHEEM SMALLS,** | : | CIVIL ACTION NO. 1:17-CV-2237 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| **C.O. SASSAMAN,** *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Basheem Smalls ("Smalls"), an inmate who was housed at all relevant times at the Federal Correctional Institution, Allenwood, Pennsylvania ("FCI-Allenwood"), commenced this action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).[1] (Doc. 1). The sole remaining defendant is correctional officer Aaron Sassaman.[2] Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 45). For the reasons set forth below, the court will grant defendant's motion.

---

[1] In Bivens, the United States Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

[2] On September 26, 2016, the court granted in part and denied in part defendants' partial motion to dismiss and for summary judgment. (See Docs. 40, 41). The only remaining claim is an Eighth Amendment claim against defendant Sassaman based on an inappropriate touching during a use of force incident.

I. **Factual Background & Procedural History**[3]

On August 23, 2016, Smalls was placed into cell number 112 in the Special Housing Unit ("SHU") at FCI-Allenwood. (Doc. 50, Statement of Material Facts ("SMF"), ¶ 1). At approximately 7:04 p.m., defendant Sassaman and other staff members began placing Smalls into ambulatory restraints. (Id. at ¶ 2). Staff first held Smalls' left arm and removed the rear cuff to prepare to move him face first against the wall to minimize staff assault or exposure to bodily fluids. (Id. at ¶¶ 3-4). Staff members removed the top half of Smalls' jumpsuit, his t-shirt, and then the bottom half of his jumpsuit. (Id. at ¶¶ 5-6). As the bottom half of Smalls' jumpsuit was being removed, he became noncompliant, allowed his body to "go limp", and allowed himself to fall face down on the floor. (Id. at ¶ 7). Staff attempted to carefully lower Smalls to the floor. (Id. at ¶ 8). While Smalls was face down on the floor, staff members removed the remainder of his clothing, including his underwear. (Id. at ¶ 9).

---

[3] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from defendant's Rule 56.1 statement of material facts and supporting exhibits. (Docs. 50, 50-1). Smalls did not file a response to defendant's statement of material facts. The court accordingly deems the facts set forth by defendant Sassaman to be undisputed. See LOCAL RULE OF COURT 56.1. See also (Doc. 55 ¶ 3; Doc. 58 ¶ 3; Doc. 64 ¶ 3; Doc. 66 ¶ 3; Doc. 69 ¶ 3; Doc. 70 ¶ 4) (advising Smalls that failure to file a responsive statement of material facts would result in the facts set forth in defendant's statement of material facts being deemed admitted).

In accordance with established practice and policy, Smalls' one-piece jumpsuit was removed so he could be placed in paper clothing before being placed into ambulatory restraints. (Id. at ¶ 10). Paper clothing allows inmates to walk in the cell while in ambulatory restraints, which they are unable to do while wearing the one-piece jumpsuit. (Id. at ¶ 11). Paper clothing is also utilized to safeguard the inmate because it rips easily and cannot be manipulated. (Id. at ¶ 12).

At approximately 7:05:46 p.m., staff prepared to put paper boxers on Smalls. (Id. at ¶ 13). The placement of paper boxers is typically done while the inmate is standing and facing the wall. (Id. at ¶ 14). When staff began placing the paper boxers on Smalls, he was on the ground because he was acting noncompliant. (Id. at ¶ 15). Defendant Sassaman attempted to place the paper boxers on Smalls and slide them up and under his body. (Id. at ¶ 16). Smalls continued to be uncooperative and the paper boxers ripped. (Id.) Defendant Sassaman and other staff then waited for a new pair of paper boxers to be delivered to the cell. (Id. at ¶ 17). While they were waiting, defendant Sassaman covered Smalls with the remaining paper clothing. (Id.) Both of defendant Sassaman's hands stayed on the paper boxers at all times. (Id. at ¶ 18). Because Smalls continued to be noncompliant, defendant Sassaman crossed Smalls' legs, which is a law enforcement control technique to prevent an inmate from kicking or injuring staff. (Id. at ¶ 19). Both of defendant Sassaman's hands were used to restrain Smalls and were nowhere near Smalls' genitalia. (Id. at ¶ 20). Other staff members then proceeded to place a blue paper top on Smalls while they waited for the new paper boxers. (Id. at ¶¶ 21-22). During this time, Smalls remained noncompliant and on

3

the ground. (Id. at ¶ 22). Staff maintained control over Smalls to avoid injury. (Id. at ¶ 23). Both of defendant Sassaman's hands stayed at Smalls' ankles in a control technique. (Id. at ¶ 24). Defendant Sassaman's hands were never near Smalls' lower half. (Id. at ¶ 25).

At approximately 7:09 p.m., a second pair of paper boxes were delivered to the cell. (Id. at ¶ 26). While using both free hands, defendant Sassaman and another officer placed the paper boxers over Smalls' ankles while his legs were bent in the control technique. (Id. at ¶ 27). Staff straightened both of Smalls' legs and lifted him up in order to move the paper boxers on the upper half of Smalls' legs and buttocks area. (Id. at ¶ 28). Once the paper boxers were securely on, Smalls was placed back into a cross-legged control technique and staff began to place him in ambulatory restraints. (Id. at ¶¶ 29-30).

A complete set of ambulatory restraints allows an inmate to be ambulatory, providing him the opportunity to move around the cell, eat, and use the restroom. (Id. at ¶ 34). Staff members first placed leg restraints on Smalls and a cuff key was used to double-lock them. (Id. at ¶ 30). Smalls was lifted to his knees and staff attempted to stand him up, but he was noncompliant, uncooperative, and dead weight. (Id. at ¶ 31). Due to Smalls' noncompliance, staff had to lift his full body weight and place him against the wall. (Id. at ¶ 32). Staff placed a belly chain around Smalls' waist in order to secure restraints to the hand restraints. (Id. at ¶ 33). While maintaining control of Smalls, the officers switched arm and body control and turned Smalls around to complete the application of ambulatory restraints. (Id. at ¶ 35). Smalls continued to be uncooperative, and staff had to

4

move his arms from his sides to the front of his body in order to place the handcuffs on him. (Id. at ¶ 36). During this procedure, the officers realized that the handcuffs were not functioning properly, and that new handcuffs were needed. (Id. at ¶ 37). Defendant Sassaman then left the cell to get new restraints. (Id.) An officer returned with a new set of hand restraints and they were applied behind the first set. (Id. at ¶¶ 38-39). The new handcuffs were double-locked, which prevents inmates from manipulating handcuffs to escape or to tighten them and hurt themselves. (Id. at ¶ 40). The first set of handcuffs were removed from Smalls, the belly chain was adjusted and secured to the new handcuffs, and the excess belly chain was secured to Smalls' side with a lock. (Id. at ¶¶ 41-43).

At approximately 7:20:03 p.m., Smalls and all staff exited the cell. (Id. at ¶ 44). Smalls was moved to another cell in the SHU that had a toilet, sink, shower, bed, and bedding. (Id.)

At no time did Smalls exhibit any signs of distress on the video. (Id. at ¶ 45).

Discovery has concluded and defendant Sassaman now moves for summary judgment. Smalls failed to respond to defendant's motion and the time for responding has now passed.[4] Therefore, the motion is deemed unopposed and ripe for resolution.

---

[4] On numerous occasions, Smalls was directed to file a brief in opposition to defendant's motion for summary judgment and was admonished that failure to file an opposition brief would result in defendant's motion being deemed unopposed. (Docs. 55, 58, 64, 66, 69, 70) (citing M.D. PA. LOCAL RULE OF COURT 7.6). (See also Doc. 4, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

## II. Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

## III. Discussion

Smalls contends that defendant Sassaman violated his Eighth Amendment rights by inappropriately touching him during a use of force incident. The Eighth Amendment protects prisoners from cruel and unusual punishment. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); see also U.S. CONST. amend. VIII. To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable state of mind" of the defendant official. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The United States Court of Appeals for the Third Circuit has recognized that sexual abuse of an inmate by a corrections officer may violate the Eighth

6

Amendment. Drumgo v. Kuschel, 811 F. App'x 115, 118 (3d Cir. 2020) (citing Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018)). When analyzing a prison sexual abuse claim, as with other Eighth Amendment claims, there is both an objective and subjective prong. See Ricks, 891 F.3d at 474. With respect to the objective prong, a plaintiff must establish an objectively serious sexual contact. See id. at 478. "[A] pattern of harassment and sexualized touching may . . . clearly be considered objectively cruel and unusual" such that it violates the Eighth Amendment. Id. at 477. As to the subjective prong, the official must have acted with a culpable state of mind—either without a legitimate penological purpose or with malice for the purpose of causing harm. See id. at 475.

Here, defendant Sassaman's actions clearly do not rise to the level of an Eighth Amendment violation. Only minor, appropriate physical contact occurred when defendant Sassaman was placing Smalls in paper clothing prior to his placement in ambulatory restraints. Smalls has failed to present any evidence demonstrating objectively serious sexual contact. Indeed, there is no evidence of any sexual touching whatsoever—only inadvertent contact during an effort to clothe Smalls. There is no evidence to suggest that defendant Sassaman's actions constituted sexual harassment or touching let alone a pattern of such misconduct. See Ricks, 891 F.3d at 474. Because Smalls' claim rests on a single incident of alleged abuse, he must demonstrate that his contact with defendant Sassaman on August 23, 2016, was so "severe or serious" as to be "'repugnant to the conscience of mankind.'" Ricks, 891 F.3d at 475 (quoting Hudson, 503 U.S. at 10). After careful consideration of the record, including the video evidence, the court concludes that

Smalls failed to establish that the incident was objectively, sufficiently severe. See, e.g., McIntyre v. Kellinger, 741 F. App'x 891, 892-93 (3d Cir. 2018) (holding that incident in which defendant dragged his hands down inmate's buttocks, gripped his buttocks, patted his thighs, and whispered in a sexual manner during a pat-down search was not objectively severe or serious under the Eighth Amendment).

Second, with respect to the subjective prong, the record demonstrates that placing inmates in paper clothing prior to ambulatory restraints protects inmates and allows them walk freely and, thus, is designed to serve a legitimate penological interest. It follows that any contact by defendant with Smalls' genitalia was purely incidental to a legitimate penological purpose. Even if defendant Sassaman unintentionally touched Smalls during this single incident, there is no evidence in the record indicating that defendant Sassaman placed Smalls in paper clothing "as a pretext to sexually arouse or gratify himself." Watson v. Wingard, 782 F. App'x 214, 217 (3d Cir. 2019); see also Ricks, 891 F.3d at 476 (where prison official's contact with inmate genitalia is incidental to legitimate official duties, then it is less likely that action was undertaken "to arouse or gratify the officer or humiliate the inmate") (citation omitted).

Where events at issue have been captured on videotape, the court must consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. See Scott v. Harris, 550 U.S. 372, 380-81 (2007). The court must view the facts in the light depicted by the videotape. See id. (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").

8

As stated, Smalls asserts that when he was in the SHU holding cell, defendant Sassaman placed him in paper clothing, ripped the paper underwear, and inappropriately touched him in the genital and anal areas. (Doc. 1 ¶ 20). A review of the video footage clearly shows that defendant Sassaman's actions were reasonable and justified. It is clear that when defendant Sassaman was placing Smalls in the paper underwear, he used the necessary force to subdue him and pull the underwear on Smalls' body. Any inadvertent contact or touching was incidental to a legitimate penological purpose. No rational trier of fact could view the video footage and find that defendant Sassaman's actions were without a legitimate penological purpose. Therefore, defendant Sassaman is entitled to summary judgment on the Eighth Amendment claim.

## IV. Conclusion

The court will grant defendant Sassaman's motion (Doc. 45) and enter summary judgment in his favor. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:  March 2, 2021